MATTHEW T. LOGAN *against* JOHN S. WILLIAMSON.

A debt may be paid or extinguished by a third person becoming responsible to the creditor, with the concurrence of the debtor.

If the creditor, without the knowledge and consent of the debtor, grants further indulgence to the person so becoming responsible, he does it at his own peril; for as between himself and the debtor, the giving indulgence, without notice, operates an agreement on his part, to look to the third person and discharge the debtor.

This was an action of assumpsit, instituted by Williamson against Alonzo C. Sadler, and Matthew T. Logan. The declaration contained three counts.

The first count set out that Sadler and Logan, on the 15th October, 1838, in consideration that Williamson had sold and delivered to them a horse, at the rate or price of $125, delivered to Williamson a writing obligatory or covenant, executed by one Thomas J. Paxton, wherein he promised to pay one Thomas W. Stobaugh, on or before the first day of September, 1838, one hundred and twenty-five dollars in cash notes, by his (Paxton's) assignment, for value received; which writing obligatory Sadler and Logan, on the 15th October, 1838, endorsed and delivered to Williamson, and then and there undertook and promised Williamson, that if Paxton did not pay him the sum of one hundred and twenty-five dollars in cash notes, they (Sadler and Logan) would pay him the said sum of one hundred and twenty-five dollars. The count then goes on to aver that Williamson, on the 16th February, 1839, presented the writing obligatory to Paxton, and requested him to pay the amount of it in cash notes; which Paxton neglected and refused to do, and further avers that he, Wiliamson, had used due diligence to collect the said debt of one hundred and twenty-five dollars in cash notes off of Paxton; and then limmediately follows the breach that Sadler and Logan, although often requested, have not paid to him, Williamson, the said sum of one hundred and twenty-five dollars.

The second count is an indebitatus assumpsit for $125, the price of a horse sold and delivered to Sadler and Logan, by the plaintiff be-

low; and the third count is a quantum meruit for the same cause of action.

To this declaration, there was a plea of the general issue and joinder; and, upon the death of Sadler, pending the suit, it was revived, and progressed in the name of Logan, surviving partner, &c.

On the 17th April, 1840, there was a trial, and verdict and judgment for the plaintiff, Williamson, for $137 82 damages. The bill of exceptions, taken at the trial, sets out fully all the evidence in the cause, and the several instructions moved for by the defendant and Logan, all of which were overruled by the court, as well as the instructions given by the court.

The evidence in the case was to the following purport: On the 15th of October, 1838, Williamson bartered a horse with Sadler and Logan for a covenant executed by Paxton, dated September 26th, 1837, by which he promised to pay one Thomas W. Stobaugh, on or before the first day of September, 1838, one hundred and twenty-five dollars in cash notes, to be assigned by him. Sadler and Logan took the horse, and endorsed the covenant to Williamson, by the common endorsement, "For value received, pay to J. S. Williamson." On the 17th of November Williamson called on Paxton, who told him that he then had not the notes, but if he would call between the first and tenth of January, 1839, he would settle it. About the first of February, 1839, Williamson again called on Paxton, who gave him an order on Robert Bonds, directing him to pay Williamson $125 in good cash notes; and, if he had them not at the time, to get them in two or three days, and keep the note he would receive of Williamson. Williamson presented Bonds with the order, who told him that if he would call on the next Tuesday he would pay him. He promised to call accordingly, but did not do so; nor ever presented the order afterwards. On the Tuesday when Williamson was to call, Bonds had the notes ready, and kept them for a month afterwards. Paxton heard nothing about the matter, from the time he gave Williamson the order on Bonds, till some time in June following. In the mean time other moneys were collected of Paxton by process of law.

Under this state of fact, the defendant, in the count below, moved

Logan *against* Williamson.

the court to instruct the jury, 1st: to find as in the case of non-suit; 2d: that Williamson was not entitled to recover on the first count in the declaration, unless he proved a special agreement on the part of Sadler and Logan, that if Paxton did not pay the note, they would; or that Williamson had used due diligence, and failed to collect the note off of Paxton; 3d: that when Williamson took the order to Robert Bonds, and gave time to Paxton, it was a discharge of the debt as to Sadler and Logan; 4th: that the plaintiff, Williamson, has been guilty of such laches that he is not entitled to recover in this action; 5th: that if the jury believe that Williamson took the note on Paxton in payment of the horse, he was not entitled to recover on the second or third counts in the declaration; 6th: that if the jury believe that Williamson took the order on Bonds in payment for the horse, or in payment of the note, he is not entitled to recover in this action; 7th: that there is no evidence going to show that Paxton is either unwilling or unable to pay the note for $125, and that the remedy for Williamson is against Paxton, upon the note, or upon the order which Paxton gave him upon Bonds, and not against the defendant in this action.

All which instructions the court overruled, and refused to give, and instructed the jury, that Williamson had a right to sue Paxton and Sadler and Logan, as makers of the note, together, or to sue Paxton as maker of the note, and Sadler and Logan, as assignors, separately, as he might choose in this action.

ASHLEY & WATKINS, for plaintiff in error:

The evidence does not show any special agreement whatever, on the part of Sadler and Logan, to pay Williamson $125, if Paxton did not pay the amount in cash notes, which is the gist of the action as laid in the first count. On the contrary, it tends rather to show that Williamson took the note on Paxton for the horse, one for the other, absolutely at his own risk; and Sadler and Logan, instead of giving him any special guaranty, simply endorsed the note to him, which endorsement was made *after the note had fallen due*, and in any event, the declaration is fatal in not averring notice to Sadler and Lo-

gan, of the non-payment by Paxton, or any demand upon them for the $125.

The instruction of the court below seems to have been founded upon the statute of assignments, approved and in force December 1st, 1837. See Rev. Stat., p. 107, which authorizes suit to be brought, in certain cases, against the maker and endorsers or assignors, together or separately; but which will be found, upon examination, to have nothing whatever to do with the case then before the court.

The note of Paxton for $125 in question, is shown by the evidence to have been executed on the 26th of September, 1837—prior to the passage of the statute, which being introductory of a new rule of law, as to the liability of parties to a note, could not relate back to this note. The statute requires such an instrument of writing to be for the payment of money alone, (see sec. 9), whereas, Paxton's note in this case, is a property note, being for $125, payable in cash notes, by his assignment. But this suit was not brought against Sadler and Logan, as assignors under the statute, because then, the action, following the nature of Paxton's note, which is a sealed instrument, must have been covenant or debt. The gist of the action is a special agreement, on the part of Sadler and Logan, to pay the $125, if Paxton did not pay it in cash notes; and no such agreement is proven. Again, the statute, in order to render the assignor liable with the maker, requires that he should have had due notice of the non-payment or protest of the instrument. Sadler and Logan could not have had such a notice in this case, because the note had been due a month and a half before they assigned it to Williamson.

If, then, there be any liability whatever upon Logan, as survivor of Sadler and Logan, in this case, it is under the old and well settled doctrine of assignments, that the assignee must have used due diligence, and failed, against the maker, before he can resort to the assignor for payment.

The plaintiff in error does not deem it necessary to go into any argument as to the overruling of the several instructions moved for by him in the court below. It is believed that the refusal to give any

one of them is fatal to the judgment in this case; but when taken altogether, they cause it to appear more manifestly erroneous.

DICKINSON, J., delivered the opinion of the court:

The plaintiff in error contends that the defendant had, by his own acts, released him. The principle is clearly established: That a debt may be paid or extinguished by a third person becoming responsible to the creditor with the concurrence of the debtor. If the creditor grants further indulgence without the knowledge and consent of the debtor, he does it at his peril. Because, as between himself and the debtor, the giving indulgence, without notice, operates as an agreement, on his part, to look to the third person, and discharge the debtor. *Chitty on Contracts*, 581; *Tatlock vs. Harris*, 3 *T. R.* 180; *Buller, Justice*, puts this case, "Suppose A. owes B. £100, and B. owes C. £100, and the three meet, and it is agreed between them, that A. shall pay C. the £100, B's debt is extinguished, and C. may recover the sum against A." The same doctrine is laid down in *Wilson vs. Coupland*, 5 *B. & A.* 228.

In applying these principles to the case before us, it is necessary to ascertain if there had been such an indebtedness between them, and concurrence of the parties, as to amount to an extinguishment of the debt as between the original parties. Sadler and Logan were indebted to Williamson, in the sum of one hundred and fifty dollars, and assigned him a note, or bond, due by Paxton, for that amount. A month elapsed before he demanded payment, and he then gave an extension of time to the first of January, 1839, when he received an order from Paxton, on his debtor Bonds, for the amount. This order was not presented by him until February following, and then, he again extends the time of payment to the next Tuesday following, when, Bonds being ready to pay and fulfil his contract, Williamson failed to appear. Here was a mutual indebtedness of the various parties, and a substitution of Bonds in place of Paxton, by the act of Williamson, with the assent of all parties whose concurrence was necessary. The liability of Sadler and Logan was, then, clearly extinguished: they had ceased to have any control. Williamson,

in receiving the order from Paxton on Bonds, and granting him time for payment, acted at his peril, and was guilty of such laches as released the plaintiffs in error, and the court below ought so to have instructed the jury. The judgment is reversed.