## MURPHY *v.* WINHAM.

### Opinion delivered October 17, 1927.

1.  CORPORATIONS—STOCKHOLDERS' AGREEMENT TO PAY SHARE OF LOSSES OF INDORSERS.—A stockholders' agreement, binding the signers to liability for contribution to pay losses of indorsers on corporation paper suffered by reason of such indorsements, did not bind the signers to payment of losses of corporation during any particular season.

2.  CORPORATIONS—AGREEMENT OF STOCKHOLDERS TO CONTRIBUTE TO INDEMNIFY INDORSERS.—Evidence that a new corporation did, in express terms or by reasonable implication, assume the payment of the debts and liabilities of the old corporation *held* not to warrant the conclusion that it was not a separate corporation, but merely a continuation of the old corporation, so that stockholders of the new corporation signing an agreement to be liable to payment of notes for indebtedness of the old corporation, secured by indorsement, should continue to all renewals, and until their discharge, were not precluded from requiring contribution from other signers of the agreement to stockholders of the old corporation, wherein losses alleged to have been sustained from the former's indorsements of old corporation notes.

3.  CORPORATIONS—SUBSTITUTION OF NOTES OF NEW CORPORATION.—Evidence that the indorsers on paper of an old corporation took up such notes, and substituted notes signed by the new corporation, which were accepted by the stockholders in payment of the old notes, *held* to amount to a satisfaction in payment of the indebtedness of the old corporation.

Appeal from Miller Chancery Court; *C. E. Johnson,* Chancellor; affirmed.

STATEMENT BY THE COURT.

This suit was brought in the Miller Chancery Court by Milton Winham, as plaintiff, against W. T. Murphy and fifteen other defendants, all stockholders in the Farmers' Oil & Fertilizer Company, a Texas corporation, to enjoin the defendants from prosecuting certain suits then pending in the district court of Bowie County, Texas, brought against Winham and others, for contribution on account of the payment of indebtedness of the said corporation paid by the defendants, for payment of which all of the parties were alleged to be jointly liable.

In October, 1917, the stockholders of the said corporation formulated a "stockholders' agreement" for procuring necessary funds upon the indorsement of its stockholders, of high financial standing, to carry on the business of the company for the season of 1917-1918. The agreement was executed for the protection of stockholders who might indorse the company's paper from loss on their indorsements, and is as follows:

"Stockholders' Agreement. Whereas, the Farmers' Oil & Fertilizer Company, a corporation, of which the undersigned are stockholders, is under the necessity of borrowing large sums of money for the purpose of carrying on its business during the season of 1917-1918; and whereas, in order to secure said large sums of money, it is necessary for certain of the stockholders, who have proper financial credit and rating, to indorse the paper of said Farmers' Oil & Fertilizer Company; now, therefore, to define the liability of each stockholder incurred by reason of the indorsement of said paper and to protect those who indorse said paper from inequitable loss by reason of their said indorsement, it is agreed and understood as follows:

"1. If loss shall accrue to the indorsers, or to any of them, by reason of the indorsement of any paper of said company, then the undersigned stockholders agree to bear the said loss with the said indorsers, said loss to be prorated between us and to be borne by each of us

according to the proportion of stock owned in said corporation.

"2. If any stockholders less than the whole number signing this agreement shall discharge any loss incurred by virtue of this agreement, then said stockholders so discharging said loss shall have the right to contribution against each of the other stockholders whose names appear hereon, in proportion to the amount of stock so owned by each of said stockholders. Said stockholders less than the whole number who shall discharge said loss shall, as between themselves, bear the said loss according to the proportion of stock held by each, expressly reserving, however, the right of contribution against those stockholders signing this agreement who do not participate in discharging said loss.

"3. The amount of stock owned by each of us respectively at the opening of the season of 1917-1918 shall be taken as the basis for computing liability hereunder, and the said basis of liability shall continue against each, whether said stock shall hereafter be sold or held, until all of the indebtedness incurred under this agreement shall be entirely paid and discharged.

"4. This agreement shall stand good for all legitimate and proper obligations of the Farmers' Oil & Fertilizer Company incurred by the officers and directors thereof in the conduct of the business of said company for the season of 1917-1918, and for any and all renewals of said obligations, and the liability herein prescribed shall stand as a personal liability.

"5. In consideration of the foregoing mutual agreements, and for the purpose of securing each and all of us from inequitable loss hereunder, as among ourselves, we and each of us, respectively, in addition to our personal liability hereunder, pledge to the other or others the amount of stock owned by us and each of us at the date of the opening of said season of 1917-1918.

"6. We each bind ourselves, our heirs, executors, administrators and assigns, to the prompt and proper discharge and performance of this agreement.

"Witness our hands on this ........................ day of October, A. D. 1917.

"............................................................

"............................................................

"............................................................

"Stockholders."

The company, when this agreement was executed, was an Arkansas corporation, but, in the fall of 1918, surrendered its charter and incorporated under the laws of Texas. At the end of the season of 1917-1918 the stockholders executed another agreement in the exact words and terms of the original agreement set out, except that it was for the season of the years 1918-1919. In the year 1919 another agreement was entered into, in the exact words as of the first, except it covered the season of 1919-1920. The same agreement exactly was re-executed for the years of 1920-1921, 1921-1922, 1922-1923, and 1923-1924, all the agreements being alike except as to the years constituting the seasons.

Under the agreement of 1917 notes of the company were executed for borrowed money, indorsed by a number of the stockholders of the company in the following form:

"No. ........................

"Farmers' Oil & Fertilizer Company, Texarkana, Ark.-Tex.

"$........................          ........................, 19..........

"On or before ........................ months after date, we promise to pay to the order of ourselves ........................ dollars, for value received, negotiable and payable without defalcation or discount, at the office of the Texarkana National Bank, of Texarkana, Texas, with interest at the rate of .......... per cent per annum, from date of said order of ourselves, as indorsed on back hereof, until paid.

"Farmers' Oil and Fertilizer Company

"By ........................ President

"By ........................ Sec'y.-Treas.

Indorsed on back:

"Pay to the order of ........................... with interest from
..............................., 19............

                "Farmers' Oil and Fertilizer Company,

                "By ...................................... President

                "By ...................................... Sec'y.-Treas.

                " ................................................................

                " ................................................................."

These notes were indorsed by the stockholders at the beginning of the season and left with the president and secretary of the company to be issued for borrowing funds as the needs of the company required. The same form of note was executed under the subsequent agreements.

Appellee, Milton Winham, was one of the signers of the stockholders' agreements of 1917-1918, 1918-1919, 1919-1920, 1920-1921, and 1921-1922, and was also an indorser upon the notes of the company issued under the terms for the said years. In 1922 Winham declined to sign the agreements or to indorse any further notes. Appellees H. P. Fouke, Mrs. Scherer and Hooks were signers upon all the agreements, and the appellee C. W. Fouke was the signer upon the agreements of 1919-1920 and 1923-1924.

At the close of the 1923-1924 season the company was indebted in the sum of approximately $232,000. The book value of its assets at the time was $269,000, and of the estimated value of $228,000. The indebtedness consisted largely of notes indorsed by stockholders. All of the appellants, however, were not indorsers upon these notes.

At a stockholders' meeting on June 30, 1924, a resolution was passed to dissolve the corporation, sell its assets, pay its debts, and distribute the surplus, if any, to its stockholders. The resolution provided that the sale of the company's property should be approved by the directors, but no minutes of the directors' meeting approving the sale was introduced in evidence. R. L. Bradshaw, one of the directors of the company, was appointed liquidating agent.

On the day of the adoption of the resolution the appellants met and agreed that they would bid on and buy in the property of the company at the liquidation sale, if it could be had for the price of $100,000, and appointed W. T. Murphy, then president of the corporation, to act as trustee for them in buying in the property at the liquidation sale for said price of $100,000. The sale was duly advertised, and made by the liquidating agent on July 12, 1924, and the property purchased by W. T. Murphy, as trustee for the appellants, for the price of $100,000. All of the assets and property, tangible and intangible, of the Farmers' Oil & Fertilizer Company were purchased at the sale.

The appellants then organized a new corporation, known as the Farmers' Cotton Oil Company, with a capital stock of $100,000, and subscribed and paid in the capital stock of the new company, the appellant, Bradshaw, subscribing for and paying in the sum of $7,300, and the appellant, Murphy, subscribing and paying in the sum of $16,000, the other appellants paying in the remaining amount of the purchase price. They then directed that the property bought in by the trustee for them be transferred by the liquidating agent directly to the Farmers' Cotton Oil Company, the new company, and transfer was made accordingly on July 14, 1924. Each of the appellants received from the new company, for the money paid in, stock in the amount equal to the money paid by each of them.

The testimony is not clear exactly as to how the paying in of the new money was done, but it is undisputed that the whole amount was paid apparently to Murphy, the trustee appointed to make the purchase, and by him turned over in payment of the purchase price to the liquidating agent for the sale made, and $100,000 paid went into the treasury of the new company, and was paid out upon its checks upon the obligations of the old company, mainly upon indebtedness held by the Texarkana National Bank in the sum of $85,000, with interest. Only the said $100,000 was new money paid in.

There still existed of the indebtedness of the old company, after distribution of the $100,000 realized from the sale of its assets, the sum of approximately $139,000. In payment of this the new company gave its notes, indorsed by appellants, to the holders of this indebtedness, who accepted them and surrendered the notes of the old company to D. C. Harrington, the secretary of the old company. This arrangement for discharging the debts of the old company was not objected to by appellees.

About two-thirds of the amount of the indebtedness discharged by the execution of the new notes in taking up the notes of the old company went to various appellants in payment of the notes they held of the old company.

The appellants brought the suit in December, 1924, in the district court of Bowie County against appellee, Milton Winham, alleging payment by them as indorsers of the obligation of the old Farmers' Oil & Fertilizer Company, and claiming the right to contribution from him under the stockholders' agreement he executed for the years 1919-1920, 1920-1921, and 1921-1922. At the same time they filed their separate suits in the Texas court against six other of the stockholders, claiming contribution.

Winham, in 1925, brought suit in the chancery court of Miller County against the appellants for an accounting, and enjoining the suit brought in Texas upon the stockholders' agreement, alleging that an accounting should be had between him and the appellants, under the agreement that he and all the appellants were citizens of Arkansas, and that the appellees should be enjoined from prosecuting the Texas suit until an accounting could be had, and prayed a temporary restraining order against the appellants, and that they be required to answer the complaint.

After the filing of the complaint by appellee, Winham, Joe Turner and Mrs. Ada Scherer, C. W. and H. P. Fouke and C. A. Hooks were allowed to become parties

plaintiff with appellee Winham, on their application in the Miller Chancery Court, alleging that they were in like position and entitled to such relief as he might obtain upon the accounting.

Appellants answered, and with their answer filed a cross-complaint against the plaintiffs reasserting the demands made in the Texas suits, but increasing the amounts claimed as follows:

| | |
|---|---|
| Milton Winham | $6,190.88 |
| C. W. Fouke | 2,425.55 |
| H. P. Fouke | 3,111.81 |
| Mrs. Ada Scherer | 2,376.28 |
| C. A. Hooks | 1,096.76 |

The case was heard by the Miller Chancery Court in January, 1926, and the plaintiffs' complaint for an accounting was sustained, and upon such accounting held that the discharge of the indebtedness of the Farmers' Oil & Fertilizer Company by notes of the new company, indorsed by appellants, amounted to payment of the indebtedness by appellants as indorsers, and that they were entitled to contribution against the appellees as signers upon the stockholders' agreement.

The court found that the sale of the assets of the Farmers' Oil & Fertilizer Company in liquidation of its affairs, by the liquidating agent, was free from fraud, and legally conducted and consummated under the laws of Texas; that, beginning with the fiscal year 1919-1920, and all times thereafter to July 12, 1924, the date of the sale of the assets of said company, the fair market value was $100,000, the amount realized at the sale thereof; that plaintiffs, except Q. O. Turner, executed the stockholders' agreement as alleged in the cross-complaint, and thereunder notes of the corporation were indorsed and used in obtaining funds necessary to operate, and in the operation of said plant during the fiscal years, as alleged, losses accrued in the operation of the plant under the stockholders' agreements, indorsements of the paper of the corporation, beginning with the fiscal year 1919-1921, until the date of its liquidation; that, after applica-

tion of the proceeds of the sale and cash on hand on the debts of the corporation, there remained an unpaid total loss, or indebtedness incurred in the operation of the plant, beginning with the fiscal year 1919-1920 and thereafter until the liquidation, in the sum of $139,522.33, designated the amount of the loss by operation for each of said seasons; that a small profit was earned in 1922-1923 of $2,502.37; that a loss in the operation of the plant was incurred for the fiscal year of 1923-1924 of $103,425.23. That defendants jointly paid said loss, $139,522.23, to the holders of the notes representing said loss and indebtedness, and said notes have been surrendered to said defendants, who are entitled to contribution against plaintiffs as follows: Against Milton Winham, signer of the stockholders' agreement for three fiscal years, to-wit: 1919-1920, 1920-1921, 1921-1922.

At the end of which time there were outstanding notes executed in the operation of said plant indorsed by Winham in the sum of $141,783.34. The said sum was reduced the following year by $16,500, leaving outstanding net indorsed notes of $125,083.34, or a percentage liability of $.05083 for each one dollar par value of stock held by him; that the amount of liability for non-signers during that fiscal year amounted to $.01655 for each one dollar of par value of stock, making the total liability of Winham $26.738 for each share (par value $100) of stock owned by him, 83 shares in number; that his total liability amounted to $2,219.25, for which the defendants were entitled to judgment with interest, and decreed accordingly.

The decree likewise shows the amount found to be due from each of the other appellees and the method of arriving at it.

The finding of the chancellor was not for the entire amount sued for by appellants, and they and appellees both appealed from the decree. All questions as to the correctness of the temporary injunction and the orders and judgment of the court upon the preliminary proceedings have passed out of the case.

No issue is raised by appellees as to the signing of the stockholders' agreements by them for the years set out in the decree. Q. O. Turner took no cross-appeal, and, the decree of the chancery court being in his favor, appellants are not claiming anything against him, and the case as to him should be affirmed.

*Will Steel*, for appellant.

*Frank S. Quinn* and *Shaver, Shaver & Williams*, for appellee.

KIRBY, J. Appellants insist that the chancellor adopted an erroneous method for determining the liability of Milton Winham, and that the corporation losses for each of the years or seasons for which he executed the stockholders' agreements should have been taken into consideration proportionately to the entire amount of indebtedness incurred by the corporation during its operation under the stockholders' agreements and remaining unpaid upon its liquidation. The stockholders' agreement, however, did not bind the members executing it to the payment of the losses of the corporation during the particular season, but only to liability for contribution to the payment of the losses of the indorsers on the corporation paper suffered by reason of their indorsements.

The undisputed testimony shows that the total losses sustained in operating the plant for the years during which the stockholders' agreements were executed to liquidation amounted to $179,940.93; that, after crediting the proceeds of the sale of the plant made in liquidation, $100,000, there remained an unpaid indebtedness incurred during the period of operation under the stockholders' agreements, $139,934.23, which had not accrued in any particular year. The notes or indebtedness being renewed from year to year until the liquidation of the corporation, and also that the defendants, appellants, paid the said balance.

Winham signed the stockholders' agreements for each of the three seasons, the 1921-22 season being the last, and the indorsed notes outstanding, executed and

renewed, for the corporation indebtedness, at the end of that period, for contribution to the payment of which the signers of the stockholders' agreements were liable upon its payment by the indorsers, Winham among the number, amounted to $141,733.34. While it is true that, during the season of 1922-23, for which Winham did not sign the stockholders' agreement, the last signed by him being for the season of 1921-1922, the corporation earned only a small profit of $2,502.37, it is also undisputed that the amount of the indorsed notes outstanding, executed and renewed, for which he was liable to contribution upon payment under the last stockholders' agreement executed by him, had been reduced to $130,351.15, in the amount of $16,500, without loss to or payment thereof by the indorsers, necessarily relieving him from liability to contribution under the stockholders' agreement to the payment of the said sum of the reduction for which the indorsers could not suffer a loss.

Each stockholders' agreement signed by Winham provided that the liability to contribution to payment of the notes and indebtedness secured by indorsements should continue to all renewals and until their discharge. The last agreement executed bound him to contribution to the payment of the losses suffered by the indorsers of the amount due thereunder to the end of the term, less the amount of reduction of said indebtedness thereafter made by the corporation. He could not, of course, be held for contribution under the stockholders' agreement to the payment of indebtedness incurred in the operation of the plant after the termination of the last contract signed by him.

The court correctly held that the sale of the assets of the corporation was duly made and free from fraud, and that the price obtained, $100,000, was the reasonable value thereof, and also that that amount constituted the fair market value of the assets of the corporation at the termination of the last stockholders' agreement executed by Winham. Deducting the amount of said sale price, $100,000, with the amount of reduction of the

indorsed liability for the season of 1922-23, $16,500, from the whole amount of the indorsed indebtedness existing at the end of the last season for which Winham executed the stockholders' agreements, $141,733.34, leaves a balance of $25,083.34, for which Winham is liable to contribution and must pay his proportionate share as fixed by said stockholders' agreement, amounting to $2,219.25, with interest, as held by the lower court.

Appellees insist that the method of liquidation of the old corporation and of payment of its indebtedness by the indorsers amounted to but a reorganization of the corporation with the liability of the new corporation to the payment of the old indorsed indebtedness, no part of which they claim has, in fact, been paid by the indorsers; and that therefore appellants are not entitled to any contribution from Winham and the other signers of the stockholders' agreement for any losses alleged to have been sustained by reason of their indorsements of the old corporation's notes, for contribution to the payment of which by the indorsers Winham bound himself by the execution of the stockholders' agreement. We find no merit in this contention.

The circumstances of the organization of the new corporation are not such as to warrant the conclusion that it is not a separate and distinct corporation, but merely a continuation of the old corporation. It did not in express terms or by reasonable implication assume the payment of the debts or liabilities of the old corporation. While it is true that some of the former stockholders of the liquidated debtor corporation, through a trustee, purchased its entire property and assets at the liquidation sale, which the court properly held duly made and free from fraud, and organized a new corporation, taking stock therein to the amount of the cash contributed by each to the payment of the $100,000 fund used in its purchase, there was no such taking over of the entire property, rights and franchise of the old by the new corporation, nor any such continuation of the business or adoption of the contracts of the old corporation,

as warrants the conclusion that the old corporation was reorganized into the new.

Although the property and assets of the old corporation, purchased by their trustee at the liquidation sale for the individuals, who were some of its stockholders, with the $100,000 contributed by them to the purchase fund, was conveyed directly to the new corporation organized by the said purchasers of the assets of the old corporation by their direction, for convenience in saving a transfer through the trustee to the new corporation, it constituted, under the circumstances of this case, no reorganization of or continuation of the old corporation.

The indorsers on the paper of the old corporation, liable to the payment of its debts as such, and for loss to whom by such indorsement the stockholders' agreement for contribution was made, paid off all the indebtedness for which they were liable by substituting notes signed by the new corporation and indorsed by them individually, taking up the old notes and discharging their liability thereunder by the new notes, which were accepted by the holders in payment of the old. This amounted to a satisfaction and payment of the indebtedness of the old corporation for payment of which they were liable upon their indorsement, and for which loss because thereof appellees were liable to contribution, so far as they are concerned. As to them, those liable to contribution, said debts were paid and extinguished, the holders having consented thereto and accepted the new obligations in lieu of the old surrendered and delivered to the makers. *Viser* v. *Bertrand,* 14 Ark. 267; *Elkins* v. *Voght Machine Co.,* 125 Ark. 6, 187 S. W. 663; and *Harrison* v. *Walker,* 124 Ark. 555, 188 S. W. 17.

It can make no difference in allowing the credit of the sale price of the assets of the corporation realized upon its liquidation, $100,000, the sale having occurred more than two years after the expiration of the last stockholders' agreement signed by Winham, from the amount of the indebtedness of the corporation in

ascertaining the amount for which Winham was liable to contribution under the stockholders' agreement, since the undisputed testimony shows that said amount was the fair and reasonable market value of the assets of the corporation at that time. We find no error in the record, and the decree is accordingly affirmed.