## VISER VS. BERTRAND.

It is within the sound legal discretion of the Circuit Court, for the attainment of justice, to give or refuse additional instructions after argument to the jury; and the exercise of that discretion will not be reviewed by this Court, except in cases where it results in a gross abuse of power.

A claim for an attorney's fee, fixed by the parties, after the services are rendered, and for money advanced by the attorney for his client, is such a demand within the meaning of the statute, (*Dig. p.* 614,) as will carry interest.

*Error to Pulaski Circuit Court.*

Hon. JOHN J. CLENDENIN, Circuit Judge.

Before the Hon. C. C. SCOTT and T. B. HANLY Judges, and Hon. F. W. COMPTON Special Judge. Hon. E. H. English, C. J. not sitting.

FOWLER & STILLWELL for the plaintiff.

BERTRAND, contra.

Mr. COMPTON, Special Judge, delivered the opinion of the Court.

This was an action of assumpsit, brought by Bertrand against Mrs. Viser. The jury rendered a verdict for Bertrand, and Mrs. Viser, the plaintiff in error, having excepted to divers rulings of the Court below, moved for a new trial. Her motion was overruled, she excepted and brought error.

The evidence adduced on the trial is substantially, as follows:

Bertrand had been the attorney of Mrs. Viser in the prosecution of a suit in the Pulaski Circuit Court, against her husband for divorce, and charged her for his services in conducting the suit $150; that Mrs. Viser had several negroes, which she claimed as her separate estate, but in which Viser also claimed an interest by virtue of his marital rights; that Mrs. Viser having set up her claim to the negroes in the suit for divorce, Viser, the husband, declared that though he did not intend to live longer with, and desired to be divorced from her, he was, nevertheless, unwilling that she should have the negroes, and on being advised by his attorney, that a decree in her favor for divorce would operate to divest him of his interest in the negroes, he, for that reason alone, concluded to enter, and did enter his defence to the suit; that pending the suit, and while Mrs. Viser was living in Little Rock, and her husband in New Orleans, a negotiation took place between the parties to that suit, through their respective attorneys, the result of which was, in the language of Viser's attorney, that "Mrs. Viser's attorney agreed that she would pay me $300, for Viser, if he would relinquish his claim to the negroes, and make no further opposition to the divorce, which, as Viser's attorney, I accepted." The attorney of Viser then wrote to him at New Orleans, and procured his deed of relinquishment of the negroes. The deed was made to Bertrand, with the understanding, that after the divorce, he was to convey to Mrs. Viser. That Bertrand, on behalf of Mrs. Viser, gave his obligation for the $300; that afterwards, in July, 1850, a decree went for Mrs. Viser in the divorce suit,

her husband making no opposition; and that the payment of the $300 was delayed for some length of time after the decree, the reason assigned for which being, that Mrs. Viser had not been able to raise the money by the sale of one of the negroes, as was intended—she having made some efforts to do so. Finally, however, Bertrand, who shortly after the divorce had paid $100 in cash, gave his note for the remaining $200 to Viser's attorney, who accepted it as a settlement of the matter, with the understanding that Bertrand would pay it whenever called on. There is abundant evidence in the record going to show, that after the divorce, Mrs. Viser, the defendant below, acknowledged her indebtedness to the plaintiff for his fee, which they agreed should be settled at $100, and also for the $300 advanced, or assumed to be paid by him for her to Viser, and repeatedly promised to pay him those amounts. Webb, one of the witnesses, testified, that on several occasions, Mrs. Viser had conversed with him touching her indebtedness to Bertrand, and that in every conversation which he had with her on the subject, she said she owed Bertrand four hundred dollars—one hundred for professional services, and three hundred for money paid by him for her to Viser, stating at the same time, that the $300 was paid to Viser for his interest in the negroes, and saying nothing about the divorce.

There was also read in evidence an instrument in writing bearing date the 10th April, 1849, by which Viser had appointed an agent, and given him full power to appropriate his (Viser's) interest in certain negroes, therein named, to the use of Mrs. Viser and her daughter.

On the trial, and before the argument of the cause, the Court, on motion of the defendant below, instructed the jury, that if the payment of the $300, or agreement to pay it, was intended, or did, in fact, in any way, tend to induce Viser to withdraw his opposition, or defence to said divorce suit, the plaintiff could not recover the same, or any part thereof, because, in such case the contract would be illegal and void. And after the cause was argued, the defendant moved the Court to give the jury

additional or further instructions, which the Court refused to do, because they were not asked for before the argument; but did, at the same time, on verbal motion of the plaintiff, and against the objection of the defendant, instruct the jury, that if they should find for the plaintiff, they should allow him interest on the money due him from the time of the commencement of the suit, etc.

This case having been here twice before, upon a state of facts very nearly the same, the principal questions involved in it, have already been settled by this Court. See 14 *Ark*. 267; 16 *Ark*. 296. The only questions now raised by the record, relate to the instructions moved after the argument of the cause, and the sufficiency of the evidence to sustain the verdict of the jury.

The 12th rule of practice prescribed by this Court to the Circuit Courts, requires, that when instructions are desired, they shall be asked for in writing, and settled by the Court before argument to the jury. We do not understand this rule to be imperative on the Circuit Judge. In the exercise of a sound legal discretion, he may, or may not—for the attainment of justice—relax it. The litigant, however, cannot demand its relaxation as a matter of right, and when he asks for a departure from the rule, he addresses himself to the sound discretion of the Court, and the exercise of that discretion will not be reviewed by this Court, except in cases where it results in a gross abuse of power. In the case before us no such abuse appears. The additional instructions moved by the defendant were subtantially the same as those already given to the jury, and might have been properly refused on that ground. The instruction moved by the plaintiff was given by the Court in the legitimate exercise of its discretion, and if the instruction is not wrong in itself, the Court did not err.

Bertrand's claim against Mrs. Viser was for $300, money advanced for her, and at her request, and also for an attorney's fee, which, after the professional services had been performed, was ascertained and fixed by the parties at $100. These two

OF THE STATE OF ARKANSAS. **491**

TERM, 1858.]                Rheubottom et al. vs. Sadler ex.

items constituted the $400 which Mrs. Viser, before the institution of the suit, often acknowledged to be due to Bertrand; and was, we think, such a demand as carried interest within the meaning of the statute. *Eng. Dig., p.* 614. There was, therefore, no error in giving the instruction.

In this case there is not a total want of evidence to sustain the verdict. It is the peculiar province of the jury to find the facts, and when they have done so, their verdict, as has been repeatedly held by this Court, will not be disturbed, if there is any evidence whatever to sustain it.

The judgment must be affirmed with costs.