# DOBBIN & WIFE VS. HUBBARD.

At common law, the legal existence of the wife is merged in that of the husband by the marriage, and as a general rule, her contracts are void, and cannot be enforced against her in a court of law.

But it is a rule in equity that a *feme covert*, in regard to her separate property, is considered a *feme sole*, and may, by her contracts, bind her separate estate.

Where a married woman has created a charge upon her separate estate, as by executing a bond, bill, note, &c., the creditor has, as a general rule, no remedy, in a court of law, against her, but he must proceed in equity: and even in equity, she is not personally responsible.

In order to charge the separate property of the wife, it is not necessary that she should execute an instrument expressly referring to it. It is sufficient that she professes to act as a *feme sole:* and shows an intention to charge her separate estate.

A bond executed by a *feme covert*, where the authority to do so is reserved by marriage contract, being void at law during the lifetime of the husband, is equally void upon his death, and enforcible only in equity against the separate estate of the wife upon the faith of which the bond was executed: and so upon the second marriage of the wife.

*Appeal from the Circuit Court of Phillips County, in Equity*

Hon. CHARLES W. ADAMS, Circuit Judge.

FOWLER & STILLWELL, for the appellants. The appellees had a complete remedy at law. The husband was liable. When the writing obligatory was executed, Mrs. Dobbin had full power and authority to do it. It was expressly reserved to her by the contract with her former husband, Pillow. During her widowhood, she might have been sued at law; and after her marriage with Dobbin, he became liable for all her debts then existing. There is nothing in the agreement between them, exempting him from liability for such or after contracted debts. 1 *Bac. Abr. p. 307, Title Baron & Feme.*

A *feme covert*, with respect to her separate property, is to be considered a *feme sole, sub modo* only; or to the extent clearly given by the marriage settlement. 2 *Kent's Com.* 138.

It is a general rule, that upon marriage the husband becomes entitled to all the goods and chattels of the wife, and the rents and profits of the lands. 2 *Kent's Com.* 113, 122, 123.

We contend that the appellee could enforce his demand in a court of law only; and that he had no right to come into a court of equity for relief. Upon the marriage of the appellants, the legal existence of the wife became merged in her husband, and the title to the slaves in question vested absolutely in him.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

This was a bill filed by John M. Hubbard, in the Phillips Circuit Court, against Wilson D. Dobbin and wife, Levisa, to enforce the payment of a debt out of the separate property of the latter. The case made by the bill is as follows:

That on the 12th of December, 1850, the defendant, Levisa, of Phillips county, Arkansas, and Napoleon B. Pillow, of Memphis, Tennessee, being about to intermarry, executed a marriage contract, with the view that the property owned by them respectively, might not be encumbered or charged, in consequence of the marriage, with any of the consequences incident thereto, either by the common law, or the laws of Arkansas; by which contract, it was agreed between them, after expressing the intention aforesaid, that notwithstanding the marriage, Pillow should hold and retain all his real and personal property, free from any claim of alimony or dower therein, on the part of the said Levisa, with power to sell and dispose of the same without her consent, &c. That the said Levisa should have free and absolute right, power and authority, to grant, bargain, sell, alien, enfeoff and deliver, any and all kinds of property which she then owned, or might thereafter acquire by gift, grant, purchase, devise or descent, whether the same be lands, goods, chattels, credits, bonds, bills, notes, or negroes, without the consent or assent of

the said Pillow, and without his joining her in the sale, convey-ance or delivery thereof, or in the execution of the title or deed therefor; it being the express understanding, between the parties to the contract, that none of the property, which either of them then owned, or might thereafter acquire, should be taken or held subject to the payment of the debts of the other, whether con-tracted prior or subsequent to their marriage.  That said Levisa should have the full right and liberty, after the marriage, to con-tract debts, and execute in her own name, evidences or notes for the payment thereof, without the consent or assent of the said Pillow: and by last will to devise to such persons as she might choose, any or all of her estate, real, personal or mixed, inclu-ding slaves, &c., without advice, consent or approval of Pillow: and, in a word, to do all and every act or acts, in reference to her said property, while married, that she might or could law-fully do, if sole and unmarried.  That during the marriage, Pil-low was to have and exercise the sole dominion over all property which might be owned by said Levisa, so far as to receive the rents, profits, and annual products of the same, to the end, that it might be applied to the mutual support and enjoyment of the parties, &c., with this restriction, that the debts which the said Levisa then owed, were first to be paid out of the said income and profits.

That this marriage contract was duly proven and recorded in Phillips county; and, after its execution, the said Levisa and the said Pillow intermarried.

That on the 24th day of May, 1851, and during her coverture with Pillow, the said Levisa executed and delivered to the com-plainant, Hubbard, her separate obligation for $701. 53, bear-ing that date, due and payable on the day it was executed.  That it was her intention, in the execution of said writing obligatory, to bind her separate property thereby, and that she did so bind the same.

That afterwards, on the —— day of ——, 1852, Pillow departed this life, and on the 24th day of January, 1853, the said Levisa

intermarried with the defendant, Wilson D. Dobbin. That prior to their marriage, she and Dobbin also entered into a marriage contract, by which it was agreed between them as follows:

That notwithstanding their contemplated marriage, the joint property of the two should be used and controlled by them mutually during their coverture; and that, in prospect of death, the said Levisa reserved to herself the right, power and privilege of disposing of any or all of her property, which she may then own, by will or devise, to such person or persons as she may choose, without the advice or consent of the said Wilson D.: and in case of dissolution of their marriage, otherwise than by death, the property of each shall be returned to the one who may have brought the same with marriage. It is further agreed, that the annual proceeds of the mutual property of the parties should be applied, first, during their cohabitation, to their mutual support, and the residue, during that time, to such objects and uses as the said Wilson D. might desire or wish. This contract was also proven and recorded in Phillips county.

The bill further alleges, that at the time of the marriage of the said Levisa and Pillow, and at the time of the execution of the marriage contract between them, and since that time, and now, the said Levisa was and is possessed of a large amount of property, as of her own, and to her sole and separate use: and among which property were, and are certain slaves, five in number, which are described.

That the said obligation has not been paid by the said Levisa, or any one for her.

The marriage contracts and the obligation are exhibited.

The bill prays that the separate property of the said Levisa, including that above described, might be decreed to have been bound by the execution of said writing obligatory. That defendants be required to discover all of the separate property owned by the said Levisa at the time said obligation was executed, or at any time since. That complainant have judgment for his debt and interest; and that he have execution for the same against

the separate property of the said Levisa, above described, or that a commissioner might be appointed to sell so much of said separate property as might be necessary for the payment of the debt and interest, at such time and place as the court might deem right and proper; and for general relief.

The defendants filed separate answers to the bill. So much of the answer of Mrs. Dobbin as is deemed material to be stated, is as follows:

She admits the execution of the marriage contract between her and Pillow: their intermarriage, and that while she was his wife, she executed and delivered to complainant the obligation exhibited with the bill, as alleged by the complainant. That Pillow died some time prior to the 24th January, 1853, but at what precise time, she was uninformed or advised. That she intermarried with Wilson D. Dobbin on the day and year last named, and was still living with him as his wife. That at the time of her marriage with Pillow, and at the time when they entered into said marriage contract, and since then, and until her said marriage with Dobbin, she was possessed of a large amount of property, as of her own, and to her sole and separate use, and among which were the slaves described in the bill. She submits, that by her marriage with Dobbin, the slaves described in the bill, and all her other personal property passed to, and vested in him, subject only to the restrictions and reservations in her favor, contained in the marriage contract between them. She states that it is not true, as alleged in the bill, that it was her intention, at the time she executed the said writing obligatory to complainant, to bind her separate property. That all she intended to do was, simply, to comply with the request made to her by the complainant, and that was to execute and deliver said instrument; and she was willing that it might have just such effect as the law of the land would give to it, and she submits to the court whether, under the state of the case, the said instrument had the effect charged in the bill. She admits the marriage contract between herself and Dobbin, as alleged in the bill; and that the writing obliga-

tory, executed by her to the complainant, had not been paid by her, or by any one for her.

The answer of Dobbin is substantially the same as that of his wife.

The case was heard upon bill, answers, replications and exhibits, and the court decreed that the writing obligatory, executed by the defendant, Levisa, to complainant, was a charge upon her separate property; that he have judgment for the principal and interest due thereon, and satisfaction thereof, out of her separate property described in the bill, and that a commissioner be appointed to execute the decree, &c. The defendants appealed to this court.

1. It is a well settled doctrine of the common law, that by the marriage, the legal existence of the wife is merged in that of her husband, and that, as a general rule, contracts made by her are void, and cannot be enforced against her in a court of law. *Reeve's Domestic Relations*, 98, 170; *Chitty on Bills* 21; 2 *Kent Com.* 150; 2 *Bright's Husband and Wife* 249. The special exceptions to this general rule are to be found in the books referred to, but having no application to the case before us, need not be mentioned.

2. But it is an equally well settled rule in equity, that a *feme covert*, in regard to her separate property, is considered a *feme sole*, and may, by her contracts, bind such separate estate. 2 *Kent Com.* 164; 2 *Bright's H. & W.* 254; *Adams' Equity* 45; *Reeve's Domestic Relations* 164; *Fire Ins. Co. of A. vs. Bay*, 4 *Barb. Sup. C. Rep.* 407; *Wylly et al. vs. Collins & Co.*, 9 *Geo. Rep.* 223. In some of the States, the English doctrine, that a *feme covert*, unless restrained by the instrument creating the separate estate, has the same power of disposition over it, if personalty, as a *feme sole*, is followed. In others, however, the feme is held to have only such power as is expressly given her. See *Note to Adam's Equity*, p. 46, where the cases *pro* and *con* are cited. But in this case, we are under no necessity of taking sides in this controversy, because the power to dispose of or

charge by contracts, her separate estate, reserved by the defendant, Levisa, in her marriage contract with Pillow, was ample and general. Nor need the effect of our "*married woman's law*," (*Digest*, chap. 104,) upon the power of a *feme covert* to dispose of, or charge her separate estate, be considered, because there is no feature of the case brought within its provisions.

3. Where a married woman has created a charge upon her separate estate, as by executing a bond, bill, or note, &c., the creditor has, as a general rule, no remedy in a court of law against her, for, as above remarked, her contracts are void at law; but he must proceed by bill in equity.

Mr. Reeve says, *p.* 164, the separate property of the wife is liable for her contracts made during the coverture, and, by process in equity, such property may be reached. But she is not liable to a judgment, on which execution issues; for, in this way, her person might be subjected to execution, and thus, the husband's right to her person would be violated.

Mr. Adams says, *p.* 45, in the absence of any fetter on anticipation, the wife has the same power over her separate property as if she were unmarried. Her disability to bind her general property is left untouched; but she may pledge or bind her separate property, and the court of chancery may proceed *in rem* against it, though not *in personam* against herself.

Mr. Bright says, *vol. 2, page* 254, 255, the wife being considered as a *feme sole* in respect of her separate property, her contracts, for valuable consideration, with reference to such property, will, in equity, be enforced. But in all cases, the court must proceed against the property, as, although she may become entitled to the property for her separate use, she is no more capable of contracting than before. But when she is a defendant in a court of chancery, the suit being to establish a claim upon her separate estate, she is so far considered as a single woman as to make it necessary to serve her personally with process. Since the wife is liable only to the extent of her separate property, &c., the court merely operates upon *it*, and not against her personally.

Her husband is a mere formal party, &c.    See, also, 2 *Kent Com.* 164.

It is manifest from these authorities, that the woman is not personally liable, even in equity, as upon a valid contract, but that the debt is regarded as a charge upon her separate estate, which the creditor is to enforce against it, by bill, in the nature of a proceeding *in rem.* The remedy of the complainant, therefore, against the separate property of the defendant, Levisa, in the lifetime of her husband, Pillow, was plain enough, if the debt was really a charge upon such property.

4. In order that the separate property may be thus bound, it is not necessary that she should execute an instrument expressly referring to it, or purporting to exercise a power over it. It is sufficient that she professes to act as a *feme sole.* For the Court of Chancery, in giving her the capacity to hold separate property, gives also the capacity, incident to property in general, of incurring debts to be paid out of it; and enforces payment of such debts when contracted, not as personal liabilities, but by laying hold of the separate property, as the only means by which they can be satisfied. *Adams' Equity* 46.

It is sufficient that there is an intention to charge her separate estate, and the contract of a debt by her during coverture, as by executing a bond, bill or note, &c., is a presumption of that intention; and it has been held that her separate estate was responsible without showing any promise. 2 *Kent Com.* (8*th Ed.*) *p.* 164; *Reeves' Domestic Relations,* 169; *Vanderheyden vs. Mallory,* 1 *Comstock Rep.* 443; 2 *Story's Eq. Juris., sec.* 1400; *Coats et al. vs. Robinson et al.,* 10 *Mo. Rep.* 760; *Bradford & wife vs. Greenway et al.,* 17 *Ala. Rep.* 279; *Collins vs. Lavenburg & Co.,* 19 *Ala. Rep.* 683; *Jarman & Co. vs. Wilkerson,* 7 *B. Mon.* 293; *Coleman vs. Wooley's Exr.,* 10 *B. Mon.* 320; *Leaycraft vs. Hadden,* 3 *Green's Ch. Rep.* 512; *Bright's Husband & wife, p.* 252, 253, 517, 518, *et seq; Viser vs. Bertrand,* 14 *Ark.* 267; *Collins vs. Randolph,* 19 *Ala. Rep.* 616; *Boarman vs. Groves,* 23 *Miss.* (1 *Cushman*) 280; 6 *U. S. An. D.* 342.

No doubt the presumption that a married woman intended to charge her separate estate, arising from the execution of a bond, bill or note, &c., by her, would be stronger or weaker according to the character of surrounding circumstances; and, without intending to declare a rule as applicable to all cases, we think it sufficiently manifest, from the facts in this case, that the defendant, Levisa, by executing her bond to complainant, intended thereby to charge her separate estate, and the mode of denial in her answer is not sufficiently positive and direct to overturn the presumption, and put the complainant to additional proof. By her marriage contract with Pillow, she reserved her entire estate, with full power to dispose of the same in any mode she might think proper, with the right to make contracts, execute notes, and other evidences of debt, and generally to act as a *feme sole* in reference to her separate estate; her husband's property not to be liable for her contracts, &c. And this marriage contract was put upon the public records of the county where she and the complainant resided. If, when she executed the bond to complainant, she did not intend to charge her separate property thereby, it was a mere mockery to make and deliver to him the instrument, and he was guilty of folly and nonsense in taking it, because, as we have seen, unless it operated to charge her separate estate, it could have no valid operation whatever, and was a null and void act, as she was not personally bound thereby.

5. The bond being void at law when it was executed, by reason of the coverture of the defendant, Levisa, it remained equally void after the death of Pillow, and could not have been enforced by an action at law, as a personal obligation against her, unless she made a new promise after she became discovert. *Vance vs. Wells & Co.*, 6 *Ala. Rep.* 737; *Same case*, 8 *Ala. Rep.* 399; *Lee vs. Muggeridge et al.*, 5 *Taunton* 36; 1 *Eng. Com. L. Rep.* 32; *Chitty on Bills* 22; *Viser vs. Bertrand*, 14 *Ark. Rep.* 267.

There being no right of action at law against Mrs. Pillow, no personal liability resting upon her for the debt, Dobbin did not assume, by his marriage with her, any legal or personal responsi-

bility to discharge the debt; and hence, the complainant had no remedy at law against him, or against him and her jointly, as he would have had upon a debt made by her after the death of Pillow, and before she married Dobbin. The remedy of complainant remained in equity to charge the separate property of Mrs. Dobbin, upon the faith of which the bond was executed. And by the marriage, Dobbin took her property, if he took it at all under their marriage contract, charged with an equitable incumbrance in favor of the complainant

The court below rendered no personal decree against defendants, not even for costs, but the decree is strictly *in rem*, to be satisfied out of the separate property of the wife charged, and a commissioner appointed to execute the decree by a sale of the slaves.

The decree is affirmed; but as the time fixed by the court for the sale of the property, the 28th day of May, 1855, has passed, the court below, on the remanding of the cause, must, at once, make suitable directions for its execution.

Hon. T. B. HANLEY, Judge, not sitting in this case.