McIlvaine, J.
This action is prosecuted by the plaintiffs-against the defendants, Benjamin Graves and Elizabeth B.,. his wife, for the purpose of charging the separate estate of the wife with the payment of a claim for the price and value-of a piano-forte sold and delivered by the plaintiffs to her on the 18th day of April, 1866, for which she executed to them a written instrument, as follows :
“.$510.. Received of Philip Phillips & Co., a No. 4 Bradbury piano, valued at five hundred and ten dollars, to be paid for by the 20th day of May, 1866.
“E. B. Graves.”
“New Carlisle, Ohio, April 18, 1866.”’
The allegations of the petition are in substance as follows t
1st. The coverture of said defendant Elizabeth, at the time of sale.
*379 2d. That she then was, and still is, the owner of a larga estate of real and personal property, and ehoses in action, of great value, to wit: nineteen thousand dollars and more, which is under her sole control and exclusive management and which she owns in fee-simple, in her own right, and as her own separate property, and from which she annually receives, for her own separate use, an income of more than $1,000.
3d. That the defendant Benjamin Graves, husband of said Elizabeth, at the time of said sale, had no property, nor is he-now possessed of any property, of any kind, subject to levy and sale on execution, or otherwise, for the payment of debts.
4th. That said Benjamin acquiesces in, and consents to, the-acts of management, control, and disposition, by said Elizabeth, of her separate property.
5th. That said piano-forte was purchased by said Elizabeth for her own benefit and for her separate use and property.
6th. That, at the time of the sale of said piano-forte, it was agreed and understood by and between said plaintiffs and said Elizabeth, that the same was sold upon the credit of her separate property, and that she intended to and did charge her separate estate and income with the payment thereof.
7th. That said claim is due, and that said defendants have-neglected and refused to pay the same.
And the plaintiffs, having specifically described, in the-petition, the separate property of said Elizabeth, pray for an-account, etc., and that the amount found due them may be-charged upon the separate estate and income of said Elizabeth, and for other and further relief, etc.
Defendants demurred to the petition on the ground that it did not state facts sufficient to constitute a cause of action.
This demurrer was sustained by the court of common pleas, and final judgment was rendered in favor of defendants.
From this judgment an appeal was taken to the district court and the case was therein reserved for decision here.
The ease now stands upon general demurrer to the petition..
*380 By the.rules of the common law, married women are placed under many and severe disabilities, both as to their personal :and property rights, intended, according to a favorite maxim, “ in the most part for their protection.”
Whatever may be' the reason of the law, the rule is maintained, “ that the legal existence of the wife is merged in that ■of the husband, so that, in law, the husband and wife are one person.”
The husband’s dominion over the person and property ox the wife is fully recognized. She is utterly incompetent to •contract in her own name. He is entitled to her society and her service; to her obedience and her property. All her personal chattels are absolutely his, and her choses in action when reduced to his possession, and the right to so reduce them his will and pleasure. He has an unqualified right to the use of her realty during coverture, and an estate for life, in the event of her death, if she bear him a child born alive, etc.
In consideration of his marital rights the husband is bound to furnish the wife a home and suitable support. He owes her protection, and is liable for her debts contracted before marriage.
Such is a brief but general outline of a married woman’s legal status, as declared and enforced in commonl-aw couxbs.
Courts of equity, however, do not fully adopt the theory, nor follow the practice of combs of law, in relation to the rights and responsibilities of husbands and wives, as between themselves, or in their relation to others.
A fundamental distinction exists at the very threshold of their jurisprudence. Equity recognizes the separate existence of the wife, and regards her as a rational and responsible subject •of its jurisdiction; entitled to its protection and amenable to the decrees of a court of conscience.
At an early period in the history of equity jurisprudence, a married woman was considered capable of possessing property for her own use. For the protection of her natural rights and to enable her to discharge her moral obligations, equity devised for her a separate estate over which the husband was not permitted to exercise his dominion. This estate, *381 at first, was created by deed of settlement to trustees for her sole use and. benefit, over which courts of equity exercised jurisdiction to the exclusion of courts of law. A power of appointment in favor of the wife was inserted in the deed,, and the trustees for her benefit were compelled to fulfil her appointments. Both real and personal property were embraced in this new creation.
In the progress of time, courts of equity dispensed with the-necessity of the power of appointment, and held that the jus(MsjoonenM was a necessary incident to the ownership of property — as well the separate property of married women as-other property.
At length the intervention of trustees was held to be-unnecessary, and equity recognized the capacity of a married woman to take a direct grant for her separate use.
This principle was gradually developed until it became-fully settled, “that however a wife’s property might be acquired, whether through contract with her husband before-marriage, or by gift from him, or from a stranger independently of such contract, equity would protect it, if duly set apart as her separate property, no matter though the husband himself must be held as the trustee to support it.” Schouler’s • Dom. Rel. 188.
This great change in the condition of married women was wrought without the aid of legislation. Courts of chancery in this, as in many other respects, recognized their own true-function of making their rules work justice by accommodating their operation to the true relations of society.
Thus a strange anomaly exists in English and American-jurisprudence. Courts of law and courts of equity co-existent in the same realm — the former merging the legal existence-of the wife in the husband — the latter recognizing her separate existence — the former declaring her incapable of acquiring, holding, or disposing of property — the latter recognizing her ability to acquire, control and dispose of her estate — the former denying her capacity to contract, or to sue-- or be sued — the latter enforcing her agreements by granting-relief both for and against her 1
*382 And yet no conflict of jurisdiction, for the simple reason, fhat courts of law take jurisdiction of the wife’s general property and grr e it all to the husband, and courts of equity take exclusive cognizance of her separate estate and control -it for her sole benefit. While the judge declares her contracts absolutely void, the chancellor proceeds vn, rem and charges her separate estate as equity and good conscience require.
It is' true that some of our American States have not kept equal pace with England in the development of the doctrine of the rights of married women, yet the decided weight of authority favors the conclusions to be announced in this case.
Hume v. Tenant, 1 Bro. C. C. 16, is a leading case in England. The bill in that case was filed to subject the separate estate of the wife to the payment of a bond given by the husband and wife. Lord Thurlow, recognizing the doctrine of an older case, in which the wife, having contracted to sell her separate estate (being authorized by settlement to do so), was held by the court to a specific performance of the -contract, as a person equally competent to contract, as if sole, says : “ I take it, therefore, it is impossible to say but that a feme-covert is competent to act as a feme-sole in respect to her separate property, when settled to her separate use. But the question here goes a little beyond that: It is not only how far she may act upon her separate property — I have no -doubt about that; but the question is, how far her general personal engagements shall be executed out of her separate property. If she had by instrument contracted that this or that portion of her separate estate should be disposed of in this or that way, I think she, and her trustees, might have been decreed to make the disposition; but if she enters into an engagement which would make a feme-sole liable to the whole extent of the contract, as to her person, etc., in every respect, it is clear such general engagement, entered into by a feme-covert, will not bind her as such. It is not like the case of an infant, who is incapable of acting; but in respect to a feme-covert, determined cases seem to go thus far, that *383 flie general engagement of the wife shall operate upon her personal property, shall apply to the rents and profits of her real estate, and that her trustees shall be obliged to apply her personal estate and rents and profits, when they arise, to the satisfaction of such general engagements.” And, in conclusion, he says, “ I have no doubt about this principle, that, if a court of equity says a feme-covert may have a separate estate, the court will bind her to the whole extent, as to making that estate liable to her own engagements; as for instance, for the payment of her debts,” etc.
In the case of Murray v. Barlee, 3 My. & K. 220, Lord Brougham, having referred to the legal status of a feme-covert, says: “ But in equity the case is wholly different. Her separate existence, both as regards her liabilities and her rights, is here abundantly acknowledged; not, indeed, that her person can be made liable, but her property may; and it may be reached through a suit instituted against herself and trustees. And it may be added, that the current of decisions has generally run in favor of such recognition, This principle has been supposed to be carried farther in Mume v. Tenant than it ever had been before, because, there, a bond in which the husband and wife had joined, and which, indeed, so far as the obligation of the wife was concerned, was absolutely void at law, was allowed to charge the wife’s estate vested in trustees to her separate use, though such estate could only be reached by implication/ and though, till then, the better opinion seemed to be that the wife could only bind her separate estate by a direct charge upon it. Lord Eldon repeatedly expressed his doubts as to this ease, but it has been constantly acted upon by other judges, and never, in decision, departed from by himself.”
And in the same case his lordship says: “ I take the foundation of the doctrine to be this: the wife has a separate estate, subject to her own control, and exempt from all other interference or authority. If she cannot affect it, no one can, and the very object of the settlement, which vests it in her, is to enable her to deal with it as if she were discovert. The power to affect it being unquestionable, the only doubt *384 that can arise is, whether or not she has validly encumbered’ it. At first the court- seems to have supposed that nothing' could touch it but some real charge, as a mortgage, or an instrument amounting to an execution of a power, where that view was supported by the nature of the settlement. But afterwards her ¿Mention was more regarded, and the court only required that she intended to deal with her separate-property. When she appeared to have done so, the court held her to have charged it, and made the trustees answer' the demand thus created against it.”
In Owens v. Dickinson, 1 Craig & Phillips, 48, Lord Cottenham, with reference to the wife’s written agreement, observes, “ that within the authority of cases which have been decided, it would have been operative upon the feme-covert? v separate estate, but not by way of the execution of a power. .... It cannot be an execution of a power, because it neither refers to the power, nor to the subject-matter of the-power, nor, indeed, in many of the cases has there been any power existing at all. . . . Equity lays hold of the separate estate, but not by virtue of anything expressed in the-contract, and it is not very consistent with correct principles-to add to the contract that which the party has not thought fit to introduce into it. The view taken by Lord Thurlow,. in Httme v. Tenant, is more correct. According to that view, the separate property of a married woman, being a. creature of equity, it follows, that if she has a power to deal with it, she has the other power incident to property in general, namely, the power of contracting debts to be paid out-of it: and inasmuch as her creditors have not the means at-law of compelling payment of those debts, a court of equity takes upon itself to give effect to them, not as personal liabilities, but by laying hold of the separate property, as the only means by which they can be satisfied.”
In Murray v. Barlee (supra) Lord Brougham says: “ If’ in respect of her separate estate, the wife is, in equity, taken as a feme-sole, and can charge it by instruments absolutely void at law, can there be any reason for holding that her liability, or, more properly speaking, her power of affecting her *385 separate estate, shall only be exercised by a written instrument ? Are we to invent a rule to add a new chapter to the-statute of frauds, and require writing where that act requires-none ? Is there any equity reaching written dealings with the property which extends not also to dealings in other ways, as by sale and delivery of goods? Shall necessary supplies-for her maintenance not touch the estate, and yet money furnished to be squandered away at play be a charge on it, if fortified by a scrap of writing ? No such distinction can be talcen upon any conceivable principle.”
And in Tullet v. Armstrong, 4 Mylne & Craig, 377, Lord Cottenham says: “ When this court first established the separate estate, it violated the laws of property between husband and wife, but it was thought beneficial, and it prevailed. It being once settled that a wife might enjoy a separate estate as'a feme-sole, the laws of property -attached to this new estate and when it was found, as a part of such laws, that the power of alienation belonged to the wife, and was destructive of the-security intended for it, equity again interfered, and by another violation of the laws of property supported the validity of the pi’ohibition against it.”
And in the same case, the court say: “ It is perfectly clear, that when a woman has property settled to her separate-use she may bind that property without distinctly stating that she intends to do so>. She may enter into a bond; bill, or promissory note, or other obligation, which, considering her state as a married woman, could only be satisfied by means, of her separate estate; and, therefore, the inference is conclusive that there was an intention, and a clear one on her part, that her separate estate, which would be the only means of satisfying the obligation into which she entered, should be-bound.” 4 Beavan, 319; 18 English Chan. R. 404.
Erom these authorities, and many other’s that might be referred to, we find the English rule to be, that courts of equity,, upon the principle that the jus disponendi is an incident to* the absolute ownership of property, will charge the separate estate of a married woman with the payment of debts arising; upon her general engagements, whether verbal or in writing,, *386 when her intention so to charge them is either expressed or implied, unless she is restrained by the terms of the instrument creating the separate estate from exercising such power of disposition.
In the United States there is a great diversity of opinion upon this subject.
In South Carolina it is denied that the jus disponendi is incident to the separate estate of married woman. It is there held that a married woman cannot dispose of, or encumber her separate estate, unless authorized so to do by the terms of the instrument creating the estate. 1 Hill’s Ch. 228; 3 Desaussure, 460.
The same doctrine seems to prevail in Massachusetts, Pennsylvania, Rhode Island, and Tennessee. 13 Cray, 328; 2 Whar. 11; 1 Rawle, 231; 2 Rhode Island, 355; 8 Humphreys, 159, 209.
In New York the jus disponendi is recognized to the fullest extent. Not only where the liability was incurred for the benefit of the estate, and for the benefit of the wife upon the faith of her separate property (7 Paige, 114; 20 Wend. 570; 2 Sandf. Ch. 287; and 22 N. Y. 450); but in a very recent case before the Commission of Appeals (42 N. Y. 613, Appendix), it was held that an action is maintainable upon a married woman’s indorsement of a promissory note as surety, for the purpose of charging her separate estate.
But in all the cases in that State it is held that equity will charge the separate estate with the payment of the wife’s debts, only when she declares her intention to make it liable in the very contract which is the foundation of the debt, unless the consideration of the debt be for the benefit of the estate itself.
This rule is in conflict with the English doctrine, as we have seen, and it is believed to be in conflict with the de•cisions of every other State in the Union, where the y’-ws dis ponendi is held to be incident to the separate estates of married women.
If the power of disposition were exercisable only within oi *387 under a power of appointment contained in the instrument ereating the estate, and by its terms limited to appointments by writing only, the New York rule would, undoubtedly, be right. But, inasmuch as a separate estate is created, where no power of appointment is granted by the terms of the instrument creating it, we believe that, for the sake of its enjoinment in accordance with the intent of the grantor, the power of control and disposition attaches of necessity under and by virtue of the general laws of property, unless restrained by the terms of the instrument. And if the jusdisponendi attaches, without limitation or restraint, we believe, with Lord Brougham, in Murray v. Barlee (supra), that w$ are not authorized “to invent a new chapter in the statute of frauds, and declare that the only mode of exercising such power shall be by a written instrument.”
And if a writing is not necessary to evidence the intention of a married woman to charge or dispose of her separate estate, we fully agree with Lord Cottenham, in Tullet v. Armstrong (supra), that such intention may be shown by parol — by proof of express declarations, or circumstances from which it may be inferred.
The existence of a married woman’s separate estate has been frequently recognized and defined by this court.
In Hardy v. Van Harlingen, 7 Ohio St. 208, it was held that equity will treat a wife, in respect to her separate estate in a legacy, as if she were a feme-sole.
In Machir & Wife v. Burroughs, 14 Ohio St. 519, it was held that “a married woman, unless restrained by the terms of the instrument of settlement, may, by her contract, and without the consent of trustees in whom the legal title may be vested, charge her separate estate, at least to the extent; of the rents, issues, and profits thereof, with the .cost of reasonable repairs and improvements for the benefit of the estate.”
That a married woman may charge her separate estate as if she were a feme-sole, and that courts of equity will proceed in rem to compel the payment of debts contracted by her on the credit of her separate estate by sequestration, appears to *388 be the settled doctrine in the following States: Arkansas (17 Ark. 189), Kentucky (16 Ben. Monroe, 182), Mississippi (27 Miss. 313), North Carolina (7 Iredell Eq. 111), Florida (6 Florida, 381), Maryland (11 Maryland, 492), New Jersey (1 McCarter, 178, and 3 Green’s Ch. 512), Missouri (23 Misso. 457), Georgia (12 Georgia, 195), Wisconsin (15 Wis. 365) Alabama (26 Ala. 332).
That the intention of a married woman to charge her sep arate estate with the payment of a debt may be inferred from the fact that she executes a note or bond for the debt, has been held in Arkansas (1 Ark. 189), Kentucky (7 Ben. Monroe, 293, and 13 Ben. Monroe, 381), New Jersey (3 Green’s Ch. 512), Missouri (23 Misso. 157), and Alabama (26 Ala. 332).
It is claimed further by the defendants, that the act of 1861,. entitled “ An act concerning the rights and liabilities of married women,” and the act amendatory thereof, passed in 1866 (S. & G. 389,390-1), which were in force at the time the cause of action herein arose, prescribe the only rules in this State, in relation to the separate property of married women; and that the only remedies in force, for subjecting the separate-estates of married women to the satisfaction of their liabilities, are those specified in those enactments. We have carefully considered these propositions, and have come to the following conclusions, to wit:
These statutes do not, nor were they intended to abridge-the powers, or restrain or limit the jurisdiction of courts of equity, in relation to the separate estates of married women ; but, on the other hand, they do enlarge the jurisdiction of the-chancellor, in so far as the general property of married women is charged, by the force of these statutes, to separate-property.
The legislative intention was to change the legal status of married women, and declare their legal “ rights and liabilities.” The common law, in so far as its rules are incompatible with the provisions of these enactments, is abrogated- or modified. The remedies therein provided may be enforced by courts of common-law jurisdiction. And to the extent *389 that courts of law are by these statutes invested with a remedial jurisdiction, heretofore exercised by courts of equity exclusively, the remedies are cumulative, and the jurisdiction concurrent.
The principle controlling this question is stated by Story (1 Story’s Eq. Jur., sec. 80), as follows : “ In modern times courts of law frequently interfere, and grant remedies, under circumstances in which it would certainly have been denied in earlier times. And sometimes the legislature, by express enactments, has conferred on courts of law the same remedial faculty which belongs to courts of equity. Now, in neither case, if courts of equity originally obtained and exercised jurisdiction, is that jurisdiction overturned or impaired by this change of authority at law, in regard to legislative enactments. Eor, unless there are prohibitory or restrictive words, the uniform interpretation is that they confer concurrent and not exclusive remedial authority.”
In Mitchel v. Otey, 23 Mississippi, 236, it was held, “that the ‘ married woman’s law,’ giving remedies by action at law, does not oust the original jurisdiction of courts of equity in «ases affecting the separate estates of married women.”
In Todd v. Lee, 15 Wisconsin, 380, the court, in reference to a similar statute of that State, say: “ The contracts of a married woman, when necessary or convenient to the proper use and enjoyment of her separate estate, are binding at law. All her other engagements stand as before the passage of the statute, good only in equity. The change from an equitable to a legal estate has not, with respect to them, enlarged her powers, or removed the disability of coverture; but she remains as if still possessed of an estate in equity, without restriction as to her power of disposition.” See also 18 N. Y. 265.
It is also claimed by defendants that the second section of the act providing “ for the proof, acknowledgment and recording of deeds and other instruments of writing ” (1 S. & C. 461), stands directly in the way of the doctrine that a married woman may charge her separate estate with the payment of debts, except in the mode pointed out in this section,
*390 We are not called upon in this case to determine whether a court of equity in this State would decree the specific performance of a married woman’s contract to execute a deed, or mortgage, or other instrument of writing for the conveyance or incumbrance of her separate estate.
But we may observe that the only office of the statute referred to, is to prescribe the mode and the only mode in which the legal title to lands and tenements in this State may be transferred or otherwise affected, by act or deed of the-owner. It treats only of legal evidences of title, or interests in land. The same mode, substantially, is prescribed for men and unmarried women and wives. But in neither case-does the statute affect the power of a court of chancery to charge equities upon lands and tenements, or attempt to define what may or may not be an equity chargeable upon real-estate.
Finally, we have arrived at the following conclusions:
1st. That a married woman, possessed of a separate estate of real or personal property, may charge the same with her debts, at least to the extent that the liabilities may be incurred for the benefit of such estate or for her own benefit,, upon the faith of her separate property.
2d. That such power is incident to the unqualifiéd ownership of property, and is only limited by the terms of the instrument creating such estate, or by implication arising therefrom.
3d. That the intention to charge her separate estate, at the time her liability was incurred, may be either expressed or implied.
4th. That such intention may be implied from the fact that she executed a note, bond, or other obligation for the indebtedness.
5th. That courts of equity will enforce the payment of such charges against such property, through a receiver, 1st, by subjecting her personal property; 2d, by sequesteiing the rents and profits of the realty; and, 3d, by sale of the realty when the same is necessary.
6th. That the jurisdiction of courts of equity, in this be *391 half, is not abridged or limited by virtue of the statutes “ concerning the rights and liabilities of married women.”
7th. That the legislative intention in enacting these statutes was to modify or enlarge the legal rights and liabilities of married women.
8th. That the statute providing “ for the proof, acknowledgment and recording of deeds, and other instruments of writing,” is not incompatible with the equitable power of a married woman to charge her separate estate with debts incurred within the scope of the rules herein stated.
Demurrer to petition overruled and cause remanded.
Welch, White, and Day, JJ., concurred.
Scott, C. J., did not sit in this case.